UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAROLAINE MONTEIRO DE SOUZA,<br><br>Petitioner,<br><br>v.<br><br>TIMOTHY S. ROBBINS, et al.,<br><br>Respondents. | No. 1:25-cv-01597-DJC-JDP<br><br><br>ORDER |

Petitioner Karolaine Monteiro De Souza is presently in the custody of the United States Immigration and Customs Enforcement ("ICE") at the California City Corrections Center. Petitioner entered the United States in 2024, was detained by immigration officials, and then released from custody. She has since resided in the United States with her spouse. Petitioner was recently re-detained after she attended her annual check-in with ICE. Petitioner has filed a Petition for Writ of Habeas Corpus along with a Motion for Temporary Restraining Order, arguing that her present detention violates the Due Process Clause of the Fifth Amendment. For the reasons stated below, the Court GRANTS Petitioner's Motion for Temporary Restraining Order.

////

////

1

**BACKGROUND**

Petitioner is a citizen and national of Brazil who entered the United States around October 12, 2024. (Pet. (ECF No. 1) ¶¶ 1, 19.) That same day, federal agents arrested and detained Petitioner and provided her with a Notice and Order of Expedited Removal, stating that pursuant to Section 235(b)(1) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1225(b)(1)) she was inadmissible and subject to removal. (Pet. ¶ 21; Barros Decl. (ECF No. 2-3) Ex. 2.) Around November 4, 2024, Plaintiff's spouse, with whom she entered the United States, completed a credible fear interview, and Petitioner was released by DHS from custody via an Order of Release on Recognizance (I-220A). (Pet. ¶ 22; Barros Decl., Ex. 4.) The Order stated Petitioner was being released pursuant to Section 236 of the INA (8 U.S.C. § 1226). (Barros Decl. ¶ 1 citing Ex. 4.) Petitioner was also served with a Notice to Appear, which stated that the previous Notice and Order of Expedited Removal provided to her in October 2024 was vacated pursuant to 8 C.F.R. § 208.30.[1] (Pet. ¶ 22; Barros Decl., Ex. 5.) The next day, Respondents commenced removal proceedings against Petitioner under 8 U.S.C. § 1229a. (Pet. ¶ 23.) Following the commencement of removal proceedings, Petitioner asserts that she "actively worked on her case," which included requesting a change of venue from the San Antonio Immigration Court to the San Francisco Immigration Court.[2] (Id. ¶ 24.) The change of venue was granted, and a Master Calendar Hearing was scheduled for July 15, 2027. (Id.; Barros Decl., Ex. 8.)

Petitioner asserts that upon her release, she complied with all immigration requirements, including following all the terms of the Intensive Supervision Appearance Program ("ISAP") and attending in-person visits to the ICE field office.

---

[1] 8 C.F.R.§ 208.30(b) allows asylum officers in certain circumstances to refer a noncitizen subject to removal proceedings under Section 235(b)(1) (8 U.S.C. § 1225(b)(1)) to removal proceedings under section 240 of the INA (8 U.S.C. § 1229a) without making a credible fear determination. Additionally, a spouse of a principal alien shall be included in a noncitizen's credible fear evaluation and determination. *See* 8 C.F.R.§ 208.30(c)(1).

[2] Following Petitioner's detention and transfer to the California City Corrections Center, Petitioner's case is now pending with the Adelanto Immigration Court. (Pet. ¶ 1.)

(Pet. ¶¶ 22, 25; Barros Decl. ¶ 3.)  Petitioner has no criminal history.  (Pet. ¶ 1.)  On April 17, 2025, Petitioner filed an application for asylum.  (Pet. ¶ 24; Barros Decl., Ex. 7.)

On October 30, 2025, Petitioner appeared, as instructed, at her annual check-in with ICE.  (Pet. ¶ 26.)  However, ICE agents arrested and detained her, accusing her of not attending her Master Calendar Hearing.  (*Id.*)  Petitioner attempted to explain that her master calendar hearing had been scheduled for July 15, 2027, but the agents ignored her explanations.  (*Id.*)  Petitioner was then transferred to the California City Corrections Center.  (*Id.* ¶ 4.)  Petitioner did not receive any written notice explaining the basis of the revocation of her release, nor did she receive a hearing before a neutral decisionmaker.  (*Id.* ¶¶ 29–31.)  Petitioner has now filed a Petition for Writ of Habeas Corpus along with a Motion for Temporary Restraining Order (Mot. TRO (ECF No. 2)).  The Motion for Temporary Restraining Order is fully briefed (Opp'n (ECF No. 8); Reply (ECF No. 9)).  The Court ordered this matter submitted without oral argument.

**LEGAL STANDARD**

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar."  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001).  To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008) (citations omitted).

**DISCUSSION**

I.   **Likelihood of Success on the Merits**

Petitioner argues she is likely to succeed on the merits of her Due Process Claim.  (*See* Mot. TRO at 5.)  She contends that she is entitled to a hearing in front of a neutral decisionmaker where ICE is required to justify re-detention before it occurs.

1   (*Id.*)  Respondents state that Petitioner's claim will fail because she is considered an
2   "applicant for admission" subject to mandatory detention by ICE under 8 U.S.C.
3   § 1225(b)(2)(A) and thus is not entitled to a bond hearing.  (Opp'n at 1.)  However,
4   Respondents also concede that Petitioner appears to have been released earlier by
5   ICE under Section 1226.  (*Id.* at 2 n.1.)  This Court has previously rejected the
6   Respondents' expansive view of Section 1225 and discussed the differences between
7   Section 1225 and Section 1226.  *See Lopez v. Lyons,* No. 2:25-cv-03174-DJC-CSD,
8   2025 WL 3124116, at *2 (E.D. Cal. Nov. 7, 2025); *Morillo v. Albarran,* No. 1:25-cv-
9   01533-DJC-AC, 2025 WL 3190899, at *2–4 (E.D. Cal. Nov. 15, 2025).  What is relevant
10  here is that Section 1225(b)(2) subjects noncitizens to mandatory detention whereas
11  Section 1226(a) involves a discretionary scheme.  *See Morillo,* 2025 WL 3190899, at
12  *2.  Notably, a detained noncitizen may not be released on conditional parole unless
13  she is not a flight risk or danger to the community.  *See* 8 U.S.C. § 1226(a)(4); *see also*
14  8 C.F.R. § 1236.1(c)(8).

15          The Court agrees that the facts presented indicate Petitioner was released
16  under Section 1226(a).  Although Petitioner initially received a Notice and Order of
17  Expedited Removal pursuant to Section 1225(b)(1), she was subsequently released
18  from detention via an Order of Release on Recognizance, which states that her release
19  is pursuant to Section 1226. (Barros Decl., Ex. 4 "In accordance with section 236 of the
20  Immigration and Nationality Act[3] and the applicable provisions of Title 8 of the Code
21  of Federal Regulations, you are being released on your own recognizance provided
22  you comply with the following conditions[ ]"); *see Ortega-Cervantes v. Gonzales,* 501
23  F.3d 1111, 1115 (9th Cir. 2007) (noting that "release on recognizance" can be used as
24  another name for "conditional parole" under Section 1226).  Petitioner also received a
25  Notice to Appear stating that she was no longer subject to expedited removal as the
26  October 2024 Notice was vacated.  (Pet. ¶ 22; Barros Decl., Ex. 5.)  Other courts have
27
28  [3] Section 236 of the INA is codified in Section 1226.

4

recognized that once immigration authorities elect "to proceed with full removal proceedings under [section] 1226, [they] cannot [ ] reverse course and institute [section] 1225 expedited removal proceedings." *Ramirez Clavijo v. Kaiser,* No. 2:25-cv-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025). Nor can the government "switch tracks" and subject a petitioner to mandatory detention under section 1225(b)(2) where it has placed a petitioner in removal proceedings under section 1229a and released her on her own recognizance under section 1226(a)). *Valencia Zapata v. Kaiser,* ---- F. Supp. 3d ----, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025).

This Court, along with other courts in this Circuit, recognize a liberty interest for individuals who have been released from ICE custody on their own recognizance. *See Lopez,* 2025 WL 3124116, at *3. The Due Process Clause protects all persons in the United States, including noncitizens, from deprivations "of life, liberty, or property" by the federal government "without due process of law[.]" U.S. Const. amend V; *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Here, DHS released on Petitioner own recognizance in November 2024. (Pet. ¶ 22; Barros Decl., Ex. 4.) Since that time, Petitioner has lived with her spouse, established a community and become an active member at a local church. (Mot. TRO at 3–4.) Petitioner has a clear liberty interest in her continued freedom.

Because such a liberty interest has been established, the Court applies the balancing test in *Mathews v. Eldridge,* 424 U.S. 319 (1976). The Court finds that the *Mathews* analysis conducted in *Lopez* is applicable here. *See* 2025 WL 3124116, at *3. Specifically, Petitioner has a substantial private interest in maintaining her out-of-custody status. *See Valencia Zapata,* 2025 WL 2741654, at *8 (noting that release under section 1226 "implied a promise" that petitioners would not be re-detained so long as they abide by the terms of their release.) The risk of erroneous deprivation

here is considerable as Petitioner has not received a bond hearing or a written revocation of parole, (Pet. ¶¶ 29–31), has no criminal history (*id*. ¶ 1), and has complied with her immigration requirements, (*id*. ¶¶ 22, 25; Barros Decl. ¶ 3). Lastly, Respondents' interest in detention is low as the effort and costs required to provide Petitioner with procedural safeguards are minimal.

To conclude, Petitioner has a liberty interest, she is entitled to process, and that process should have been immediately afforded to her prior to re-detention. Thus, Petitioner has established a likelihood of success on the merits.

## II.   Irreparable Harm

Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief. "It is well established that the deprivation of constitutional rights "unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted). Moreover, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). The Petitioner has thus established irreparable harm.

## III.   Balance of the Equities/Public Interest

The final two *Winter* factors merge when the government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citations omitted). Public interest concerns are also implicated as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations and citations omitted). "The government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (internal quotations and citations omitted). Moreover, the "public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the

public of immigration detention are staggering." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1037 (N.D. Cal. 2025).

Here, the harm to Petitioner is significant as she faces prolonged ICE detention, which separates her from her friends and family. (Mot. TRO at 11–12.) The harm to Respondents is minimal as the only potential hinderance the government may experience is a short delay in re-detaining Petitioner. The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Further, there is no argument that Petitioner is now a risk of flight or a danger to the community. For these reasons, the Court concludes that the equities and public interest weigh in favor of Petitioner.

## IV.   Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda*, 753 F.2d at 727, the Court finds that no security is required here.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED;
2. Petitioner Karolaine Monteiro De Souza shall be released immediately from Respondents' custody. Respondents shall not impose any additional

7

restrictions on her, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing. Respondents shall provide a status report confirming Petitioner's release by 5:00 P.M. on November 23, 2025.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice – describing the change of circumstances necessitating her arrest, and detention, and a timely hearing. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have her counsel present.

4. Respondents are ORDERED TO SHOW CAUSE on or before December 2, 2025, as to why this Court should not issue a preliminary injunction on the same terms as this Order. The Respondents' failure to respond to the Order to Show Cause shall be construed as its non-opposition to the Court granting a Preliminary Injunction on the same terms and conditions imposed in this Order. *See* L.R. 230(c). On or before December 4, 2025, Petitioner may file a Reply, if any. The Preliminary Injunction is not currently set for a hearing but the Court may subsequently order one.

IT IS SO ORDERED.

Dated:   **November 23, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – DESOUZA25cv01597.TRO

8